UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOE REDMON,

    *Plaintiff*,

v.

YMCA OF METROPOLITAN
WASHINGTON,

    *Defendant*.

Civil Action No. 1:18-cv-02864 (CJN)

**MEMORANDUM OPINION**

Plaintiff Joe Redmon was a male supervisory lifeguard for Defendant YMCA of Metropolitan Washington, where he had worked for several years. *See generally* Am. Compl., Dkt. 11. But after receiving anonymous complaints of sexual harassment by one or more of the female lifeguards Redmon supervised, the YMCA suspended and then terminated him. *Id.* ¶¶ 24–25. Redmon alleges that the termination was pretextual and that he was in fact terminated on the basis of his sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). Am. Compl. ¶¶ 39–51. The YMCA argues that the Amended Complaint fails to state a claim. *See generally* Def.'s Mem. in Supp. of Mot. to Dismiss Pl.'s Am. Compl., Dkt. 12-1 ("Mot."). The Court agrees and grants the YMCA's Motion to Dismiss.

    **I.**    **Background**

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept well pleaded facts in the Amended Complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Redmon was a long-time YMCA lifeguard and had recently been promoted to the position of "Aquatic Coordinator." Am. Compl. ¶¶ 14, 17. In his new job, he

1

supervised several junior lifeguards of both sexes. *Id.* ¶¶ 16, 20. By his own estimation, Redmon "was a stellar employee who was a highly skilled lifeguard, supervisor, swim instructor and coach." *Id.* ¶ 17. Among his other duties, Redmon regularly counseled and disciplined lifeguards, including issuing formal disciplinary reports. *Id.* ¶ 32. On at least one prior occasion, a female subordinate fabricated a sexual harassment claim against Redmon in retaliation for his role in disciplining her, but he was later exonerated. *Id.* ¶¶ 31–32.

Redmon alleges that, despite his supervisory responsibilities, he was just another lifeguard and engaged in regular social interactions, including jokes and banter of a sexual nature, with his fellow lifeguards. *Id.* ¶ 19. That changed on April 30, 2018, when his employer confronted him with allegations of sexual harassment reported by an anonymous female lifeguard. *Id.* ¶ 18. Redmon asserts that he has no knowledge of the purported incident because the YMCA refused to inform him of when it occurred, who was there, or what Redmon or others may have said. *Id.* ¶¶ 21–23, 26, 29, 38. Redmon nevertheless denied any misconduct, but the YMCA placed him on immediate administrative leave pending an investigation. *Id.* ¶¶ 23–24.

Four days later, the YMCA terminated Redmon's employment without further investigation or explanation. *Id.* ¶ 25, 27. Redmon alleges that the YMCA made no attempt to learn his account of the incident or determine the allegations' credibility and that it had no formal policy for handling sexual harassment complaints. *Id.* ¶¶ 27–30. As far as Redmon knows, no other employee (male or female) was ever disciplined for participating in the sexual banter Redmon believes formed the basis for the harassment complaint against him. *Id.* ¶¶ 21, 37–38.

Redmon filed a complaint with the EEOC within a month of the incident, alleging, among other claims, discrimination on the basis of national origin in violation of Title VII. *Id.* ¶ 10. The EEOC issued a "right to sue" letter on September 6, 2018, and Redmon timely filed

this suit on December 6, 2018. Compl., Dkt. 1. Redmon amended his theory of the case between the EEOC proceeding and this action, dropping his other claims and alleging only discrimination on the basis of sex.[1] *See* Compl. ¶¶ 29–41, Am. Compl. ¶¶ 39–51. Following an initial motion to dismiss, Redmon amended his Complaint on March 4, 2019, which the YMCA moved to dismiss on March 25, 2019.

## II. Legal Standard

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although the Court accepts all well pleaded facts in the Amended Complaint as true, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 554–55 (internal quotations omitted). The claim to relief must be "plausible on its face," enough to "nudge[ the] claims across the line from conceivable to plausible." *Id.* at 570.

---

[1] The basis for Redmon's amending the theory of discrimination in this Court is unclear. At oral argument on the Motion to Dismiss, the YMCA asserted for the first time that the amendment was improper and suggested that the Amended Complaint should be dismissed based on Redmon's failure to exhaust administrative remedies. *See, e.g.*, *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) ("Title VII complainants must timely exhaust their administrative remedies before bringing their claims to court." (internal quotation omitted)); *see also Deppner v. Spectrum Health Care Resources, Inc.*, 325 F. Supp. 3d 176, 186 (D.D.C. 2018) (dismissing a hostile-work-environment claim for failure to exhaust administrative remedies because the related EEOC complaint alleged only discrimination on the basis of national origin and could "not be read to encompass a hostile work environment claim"). But exhaustion is not a jurisdictional requirement, and so defendants alleging a failure to exhaust must expressly articulate that argument in their motion to dismiss or risk waiving it. *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1850–52 (2019). The YMCA did not raise the exhaustion argument in its Motion to Dismiss, so the Court declines to reach the issue.

Redmon's briefing in opposition to the Motion to Dismiss misapprehends this standard. He cites repeatedly to the "no set of facts" language contained in *Conley v. Gibson* and its progeny. *See* Pl.'s Mem. in Opp. to Mot. to Dismiss Pl.'s Am. Compl., Dkt. 13 at 4 ("Opp.") (citing *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) ("[A] complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")); *see also id.* (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (holding dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations")). But *Conley* "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly*, 550 U.S. at 563. The "no set of facts" phrase "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* Therefore, to survive the Motion to Dismiss, Redmon must allege sufficient facts for the Court to determine that his suspension and termination were at least plausibly caused by the YMCA discriminating against him because he is a man and not because of some other legitimate reason.

### III.     Analysis

To state a claim for sex discrimination under Title VII, Redmon must allege that "(1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination (that is, an inference that his employer took the action because of his membership in the protected class)." *Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002). The YMCA concedes the first two points, but it disputes that Redmon has plausibly alleged any illegal discrimination.

4

"The burden of showing a *prima facie* case at the pleading stage is not onerous." *Easaw v. Newport*, 253 F. Supp. 3d 22, 26 (D.D.C. 2017) (internal quotation omitted). Redmon can raise an inference of discrimination in one of two ways. He can show either (1) that he "was treated differently from similarly situated employees who are not part of the protected class" or (2) that his termination "[was] not attributable to the two . . . common legitimate reasons for discharge: performance below the employer's legitimate expectations or the elimination of the plaintiff's position altogether." *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005).

Redmon opts for the former method, alleging disparate treatment. He points to the purported incident of sexual harassment and alleges that it was merely one instance of a longstanding practice of sexual banter among colleagues. Am. Compl. ¶¶ 18–19. The YMCA had never disciplined anyone for such behavior, he argues, but it suddenly singled him out, suspended him, and terminated him without investigation based on a single, unsubstantiated allegation. *Id.* ¶¶ 21–22, 33–34. In Redmon's view, many employees, particularly female lifeguards, participated in the same conduct for which he was punished, but none suffered any adverse consequences. *Id.* ¶¶ 21, 35, 38. Rather than consider the possibility that the instant allegation was yet another false accusation in retaliation for Redmon's disciplinary activities, the YMCA took the subordinate's word at face value, discredited Redmon's denial, and terminated him. *Id.* ¶¶ 23–25, 31–34. Redmon alleges that because he is a man and the other lifeguards are women, the disparities in treatment must have been motivated by animus against men. *Id.* ¶¶ 43–45.

Redmon "need not anticipate legitimate, non-discriminatory reasons that may be proffered by the employer for the adverse employment action nor allege pretext to survive a motion to dismiss." *Easaw*, 253 F. Supp. 3d at 26–27 (citing *Swierkiewicz v. Sorema N.A.*, 534

5

U.S. 506, 511, 515 (2002)). But he "must establish a nexus between defendants' alleged discriminatory motive and the adverse action" by "present[ing] evidence above the speculative level" and "mak[ing] sufficient factual allegations to nudge [his] claims across the line from conceivable to plausible" and "go beyond an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 29–30 (internal quotations omitted).

It is conceivable that the YMCA fired Redmon because he's a man, but critical flaws in Redmon's allegations make that claim implausible at best. Most importantly, in Redmon's attempt to show that he was treated differently than similarly situated colleagues, he argues that his situation was comparable to that of his female subordinates. Yet he ignores that he was their supervisor.[2] "A plaintiff must . . . demonstrate that all of the relevant aspects of [his] employment situation were nearly identical to those of the [comparator]." *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999). Redmon essentially argues that a group of lifeguards all behaved in a similar, inappropriate way but only the man was fired. But it is more accurate (and more plausible) to describe the situation as one in which a group of lifeguards all behaved in a similar way, but only the supervisor was fired.

Redmon's attempt to group himself with his subordinates also ignores that he has a history of sexual harassment complaints filed against him, even if an earlier complaint was discredited. *See Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1159–60 (9th Cir. 2010) ("Moreover, plaintiffs and the female [employees] are distinguishable because plaintiffs' conduct

---

[2] At oral argument, Redmon argued that his duties (scheduling shifts and disciplining lifeguards for poor performance) were so minimal that he cannot be considered a supervisor, thereby erasing any meaningful differences between his position and that of the other lifeguards. But the Amended Complaint plainly alleges that Redmon was a "supervisor," *id.* ¶¶ 16–17, and was responsible for issuing "write ups of his female subordinates," *id.* ¶ 32. An employee with "the power to . . . discipline an[other] employee" is a supervisor under Title VII. *Vance v. Ball State Univ.*, 570 U.S. 421, 426 (2013) (internal quotation omitted).

6

gave rise to a complaint of sexual harassment, while the female [employees'] alleged conduct did not."). It is therefore more accurate (and more plausible) to describe the situation as one in which the only employee who was terminated was the sole supervisor, who was also the only employee with a history of sexual harassment complaints.

The Parties' briefs focus on whether Redmon must name particular individuals who were treated differently. *See* Mot. at 6–7; Opp. at 7–9. Of course, Redmon cannot identify such people because the YMCA declined to disclose the identity of his accuser, whether other individuals were accused of similar misconduct, or the nature of the alleged remarks. This debate, however, misses the larger point. Redmon concedes that he was the only supervisory lifeguard and he does not allege that sexual harassment complaints were made against other employees. It is therefore irrelevant whether he can name specific comparators because there were no comparable supervisors with previous complaints against them who were treated more favorably. The Amended Complaint fails to allege appropriate comparators not because Redmon does not have the names of relevant comparators, but rather because there apparently are no such comparators (or at least none are alleged in the Amended Complaint). Redmon therefore cannot show that "he was treated differently from similarly situated employees who are not part of the protected class," *George*, 407 F.3d at 412, and he makes no attempt to plead a claim of discrimination by some alternative method.

Moreover, the Amended Complaint alleges that both male and female lifeguards participated in the sexual banter. Am. Compl. ¶ 20. To be sure, Redmon alleges that he lacks enough information to determine whether other males participated in the specific incident that formed the basis of the most recent sexual harassment accusation. But if other male employees also engaged in sexual banter at one time or another, and if the YMCA had some discriminatory

bias against men, one would expect other men to have suffered some adverse employment consequences. That this did not happen is further reason to conclude that Redmon has not pleaded that the YMCA terminated him because of some animus against men.

Thus, the plausible explanation for any disparity in treatment is that the YMCA held supervisors who had been accused of sexual harassment to a higher standard than it enforced among subordinates who had not. Title VII does not forbid such a policy. *See, e.g., Slate v. Pub. Def. Serv. for D.C.*, 31 F. Supp. 3d 277, 298–99 (D.D.C. 2014) ("Th[e] comparison is unavailing because the plaintiff also alleges that a male colleague continued to be employed . . . despite [being similarly situated], a fact which undercuts the plaintiff's allegation that [the employer] discriminates against males."); *see also Mathis v. Wachovia*, 509 F. Supp. 2d 1125, 1136 (N.D. Fla.) (holding that a bank teller was not similarly situated to "an experienced Teller Supervisor with the responsibility to guide other employees"), *aff'd* 255 F. App'x 425 (11th Cir. 2007).

Other allegations in the Amended Complaint are inconsistent with Redmon's claim. For example, the managers who allegedly fired Redmon because of their animus against men were the same managers who recently promoted him. Am. Compl. ¶ 29. Although that fact would not be grounds for dismissal on its own, it at least raises an inference of non-discrimination and nudges the Amended Complaint further outside the realm of plausibility. *See Waterhouse v. District of Columbia*, 124 F. Supp. 2d 1, 12–13 (D.D.C. 2000) ("[t]he fact that the same individuals hired and terminated plaintiff within an eleven-month period further undercuts any allegation of discrimination"), *aff'd*, 298 F.3d 989 (D.C. Cir. 2002), *and abrogated on other grounds by Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843 (D.C. Cir. 2006). This is the sort of factual allegation that "suggest[s sex] was not a factor in the termination decision," "significantly weaken[ing] a complaint that is already barren of factual allegations that could

give rise to an inference that any of the adverse employment actions of which the plaintiff complains were based on considerations of [sex]." *Easaw*, 253 F. Supp. 3d at 32.

Redmon also alleges that his female subordinates may have concocted false accusations against him in retaliation for disciplinary reports he issued them and that the YMCA failed to investigate the truth of those claims. Am. Compl. ¶¶ 31–32. But even accepted as true, that fact would not state a violation of Title VII. This Court does not "sit as [a] 'super-personnel department that reexamines an entity's business decisions.'" *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986)). An employer that terminates a supervisor merely because he does not get along with his subordinates does not violate Title VII. Indeed, even assuming the accusations against Redmon were concocted, the YMCA could still exercise its business judgment and refuse to expend funds to investigate the allegations or side with the subordinates if doing so would be better for morale (assuming, of course, that those judgments were not motivated by improper animus). Such decisions would not run afoul of Title VII, and courts "may not second-guess an employer's personnel decision absent demonstrably discriminatory motive." *Id.* (internal quotation omitted).

## IV.     Conclusion

To state a claim for relief, Redmon need not present detailed facts proving that the YMCA fired him because of his sex, but he must allege facts that make it plausible rather than merely conceivable. *Twombly*, 550 U.S. at 556. The Amended Complaint does not allege facts sufficient to give rise to such an inference and fails to "go beyond 'an unadorned, the-defendant-unlawfully-harmed me accusation.'" *Easaw*, 253 F. Supp. 3d at 32 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

9

For the foregoing reasons, the YMCA's Motion to Dismiss is **GRANTED**. This case is **DISMISSED** without prejudice. An Order will be entered contemporaneously with this Memorandum Opinion.

DATE: October 24, 2019

*Carl J. Nichols*
CARL J. NICHOLS
United States District Judge